The defendants in an action filed in the Montgomery Circuit Court appeal from the denial of their motion to compel arbitration. Because the trial court erred in holding that the defendants, Dean Witter Reynolds, Inc. ("Dean Witter"), Bank One, Columbus, N.A. ("Bank One"), and Peter S. DiMaggio waived their right to arbitrate, we reverse and remand.
 I.
Patricia McDonald filed this action against Dean Witter, Bank One, and DiMaggio, alleging that the defendants had, in breach of contract, allowed her son, a stockbroker for Dean Witter, to misappropriate $171,828.10 from her account with Dean Witter.[1] McDonald had opened an account with Dean Witter at its office in Montgomery, where her son was employed. At that time, DiMaggio was the office manager and her son's supervisor. When McDonald opened her account, she entered into an "Active Asset Account Agreement" (the "Account Agreement"). As part of the Account Agreement, McDonald agreed to open a checking account and a Visa credit-card account with Bank One. The Account Agreement includes an arbitration provision, which reads in pertinent part:
 "I [McDonald] agree and, by carrying my accounts, you [Dean Witter] agree that all controversies between me or my agents and you or your agents, representatives or employees arising out of or concerning any such accounts, any transactions between us or for such accounts, or the construction, performance, or breach of this or any other agreement between us, whether entered into prior to, on or subsequent to the date below, shall be determined by arbitration *Page 541 
only before the National Association of Securities Dealers, Inc.; the New York Stock Exchange, Inc.; the Municipal Securities Rulemaking Board; or the National Futures Association (in case of controversies concerning futures or commodities), as I may elect. If I do not make such an election by registered mail addressed to you at your office within five days after the receipt of notification from you requesting such election, then I authorize you to make such election for me. . . ."
Relying on this provision, Dean Witter, Bank One, and DiMaggio moved jointly to stay the proceedings and to compel arbitration of McDonald's claims. McDonald responded with the argument that the defendants had waived their right to enforce the arbitration provision by Dean Witter's failing to respond to three letters her attorney had sent to counsel for Dean Witter before she brought this action. The trial court agreed and denied the defendants' motion to compel arbitration.
 II.
A direct appeal is the proper procedure by which to seek review of a trial court's denial of a motion to compel arbitration. See Crimson Industries, Inc. v. Kirkland,736 So.2d 597, 600 (Ala. 1999); A.G. Edwards Sons, Inc. v. Clark,558 So.2d 358, 360 (Ala. 1990); see also Federal Arbitration Act ("FAA"),9 U.S.C. § 16 (providing that an appeal may be taken from an order denying a motion to compel arbitration). This Court reviews de novo a trial court's denial of a motion to compel arbitration. See Crimson Industries, Inc., 736 So.2d at 600; Patrick HomeCenter, Inc. v. Karr, 730 So.2d 1171, 1171 (Ala. 1999).
Section 2 of the FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA preempts contrary Alabama law and makes arbitration agreements evidencing transactions involving interstate commerce enforceable in Alabama courts. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265,271 (1995); Crown Pontiac, Inc. v. McCarrell, 695 So. 615, 617
(Ala. 1997); Prudential Securities, Inc. v. Micro-Fab, Inc.,689 So.2d 829, 832 (Ala. 1997).
McDonald does not dispute that the Account Agreement contains a valid arbitration provision, or that the claims stated in her complaint against Dean Witter, Bank One, and DiMaggio fall within the scope of that arbitration provision.[2] She does not dispute that the arbitration provision is governed by the FAA. See generally Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213
(1985) (applying the FAA to a substantially similar arbitration agreement between Dean Witter and a customer). McDonald argues only that the defendants waived their right to compel arbitration of her claims by Dean Witter's failing to respond to three letters her attorney sent to it before she commenced this action. The first letter states, in pertinent part:
 "I am aware of the arbitration provision in your contract with Mrs. McDonald, although I have not thoroughly researched its enforceability as yet. Assuming that it is enforceable and that you adhere to your apparent earlier position of being unwilling to fully compensate Mrs. McDonald, please advise me of what mutual arrangements and stipulations you feel we should make to go ahead [and] take this matter to arbitration."
The second letter simply enclosed a copy of the first letter. The third letter stated McDonald's position that "by your failure to respond to my [first] letter . . ., you have waived your right to invoke the arbitration *Page 542 
clause which might have otherwise been applicable in this case." McDonald contends that the first letter was a demand to institute arbitration proceedings and that by Dean Witter's failing to respond the defendants waived their right to arbitration.
Dean Witter, Bank One, and DiMaggio argue that it is for the arbitrator, and not the court, to decide whether Dean Witter's prelitigation conduct amounted to a waiver of the right to arbitrate, and, alternatively, that Dean Witter's prelitigation conduct, in failing to respond to the letters, did not amount to such a waiver. We agree that the issue whether the defendants waived their right to arbitration is a matter for the arbitrator to decide; thus, we need not address the issue whether they waived their right to arbitration.
In ruling on a motion to stay judicial proceedings following a request for arbitration, the role of a court is to decide matters of "substantive arbitrability," that is, whether there is a valid arbitration agreement between the parties and whether the specific dispute presented by the case falls within the scope of that agreement. See John Wiley Sons, Inc. v. Livingston,376 U.S. 543, 546-47, 558 (1964); Glass v. Kidder Peabody Co.,114 F.3d 446, 455 (4th Cir. 1997). Conversely, matters of "procedural arbitrability," such as whether a party seeking arbitration has waived its right to arbitration by failing to comply with procedural requirements set forth in the arbitration agreement, are for the arbitrator to decide. See John Wiley Sons, Inc.,376 U.S. at 555-58; see also Glass, 114 F.3d at 453-56, 455 ("Defenses of laches, mere delay, statute of limitations, and untimeliness constitute a broad category of waiver defenses that may be raised to defeat compelled arbitration. Laches, like its companion defenses, however, is a matter of `procedural arbitrability' solely for the arbitrators' decision and not for the court."); In re Mercury Constr. Corp., 656 F.2d 933, 942 (4th Cir. 1981), aff'd sub nom. Moses H. Cone Memorial Hosp. v. MercuryConstr. Corp., 460 U.S. 1 (1983) ("[A]ny claim of untimeliness, waiver or laches . . . is for the arbitrator and may not be an excuse for non-arbitrability."); see generally Annotation, Waiverof, or Estoppel to Assert, Substantive Right or Right to Arbitrateas Question for Court or Arbitrator, 26 A.L.R.3d 604, 606 (1969) (noting that "courts, subsequently to the decision in John Wiley Sons, Inc. v. Livingston, have generally recognized that where the question of waiver or estoppel is predicated upon a failure to comply with the procedural aspects of the arbitration agreement, the question is one for the arbitrator, and not for the court, to decide").
In John Wiley Sons, Inc., an employer opposed a union's motion to compel arbitration of a labor dispute, arguing, among other things, that it had no duty to arbitrate the dispute because the union had failed to follow the three-step grievance procedure, of which arbitration was the third step, set forth in the collective-bargaining agreement between the employer and the union. See 376 U.S. at 555-56. Specifically, the employer argued that because the union did not attempt to resolve the dispute by the methods provided for by the first two steps of the grievance procedure, the union was not entitled to initiate arbitration. See id. The employer argued that the court should determine whether the union had met the procedural conditions to arbitration. See id. at 556. The Supreme Court of the United States held that the arbitrator, not the court, should make that determination, stating that "[o]nce [a court has] determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration [(substantive arbitrability)], `procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." 376 U.S. at 557. Thus, once the court has determined *Page 543 
that there is a valid arbitration agreement between the parties and that the specific dispute falls within the scope of that agreement, the court must refer the dispute to arbitration. SeeGlass, 114 F.3d at 453.[3]
McDonald does not dispute that she had a valid arbitration agreement with Dean Witter and that her claims fall within the scope of that agreement. Instead, she argues that the defendants waived their right to arbitration under that agreement by Dean Witter's failing to initiate arbitration proceedings in response to her attorney's letters. Specifically, McDonald asserts that the arbitration provision provides that if she failed to select an arbitrator within five days after giving Dean Witter notice of her dispute, then Dean Witter was obligated to select an arbitrator. McDonald says she did not select an arbitrator within the five-day period and that Dean Witter, therefore, was obligated to select an arbitrator; thus, she says, because Dean Witter failed to select an arbitrator, the defendants waived their right to arbitration. Like the employer's argument in John Wiley Sons, Inc., McDonald's argument concerns an issue of procedural arbitrability. Therefore, the arbitrator is the proper authority to decide the issue whether the defendants waived their right to arbitration; the trial court erred in deciding that issue.[4] *Page 544 
Moreover, we find that McDonald and Dean Witter agreed to arbitrate the issue of waiver. The arbitration provision states that McDonald and Dean Witter agree to arbitrate "the construction, performance, or breach of [the arbitration provision]." McDonald's defense of waiver requires a construction of the arbitration provision and is therefore a matter for the abitrator to decide. See International Union of Operating Eng'rsv. Flair Builders, Inc., 406 U.S. 487, 491-92 (1972) (holding that "once a court finds that . . . the parties are subject to an agreement to arbitrate, and that agreement extends to `any difference' between them, then a claim that particular grievances are barred by laches is an arbitrable question under the agreement").
 III.
Because the issue whether Dean Witter, Bank One, and DiMaggio waived their right to arbitration is an issue of procedural arbitrability, and because McDonald agreed to arbitrate that issue, we reverse the trial court's order denying the defendants' motion to stay the proceedings and to compel arbitration, and we remand the case for entry of an order consistent with this opinion.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Lyons, Brown, Johnstone, and England, JJ., concur.
Houston and Cook, JJ., concur in the result.
[1] McDonald's son is not a party to these proceedings.
[2] McDonald does not dispute that DiMaggio and Bank One are agents of Dean Witter.
[3] In Glass, the United States Court of Appeals for the Fourth Circuit explained the distinction between "substantive arbitrability" and "procedural arbitrability."
 "Both sections 3 and 4 [of the FAA] `call for an expeditious and summary hearing, with only restricted inquiry into factual issues.' Hence, whether granting an order to arbitrate under section 3 or section 4, the district court must first determine if the issues in dispute meet the standards of either `substantive arbitrability' or `procedural arbitrability.' A substantive arbitrability inquiry confines the district court to considering only those issues relating to the arbitrability of the issue in dispute and the making and performance of the arbitration agreement. . . . [T]he first duty of the district court . . . is to conduct a substantive arbitrability inquiry — meaning the court `engage[s] in a limited review to ensure that the dispute is arbitrable — i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.' If `the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute.' All other issues raised before the court not relating to these two determinations fall within the ambit of `procedural arbitrability.'"
114 F.3d at 453 (footnotes and citations omitted) (second bracketed alteration in Glass) (emphasis omitted).
[4] We note that by the term "waiver" we do not mean a "default" in the sense in which that term is used in § 3 of the FAA (the section applicable in this case), which is a matter for the court to decide. Under § 3 a party may seek a stay of "any suit or proceeding . . . brought . . . upon any issue referrable to arbitration[,] . . . providing the [party] is not in default in proceeding with . . . arbitration." 9 U.S.C. § 3. Although the term "default" is "often likened to waiver or laches or estoppel," it is not used for purposes of § 3 in that sense. In re MercuryConstr. Corp., 656 F.2d at 939. Instead, a "default" occurs under § 3 when a party's delay in requesting arbitration has caused prejudice to the other party, and such prejudice is found when the party seeking arbitration has "`substantially invoke[d] the litigation process.'" Morrison Restaurants, Inc. v. HomesteadVillage of Fairhope, Ltd., 710 So.2d 905, 907 (Ala. 1998) (quoting Companion Life Ins. Co. v. Whitesell Mfg., Inc.,670 So.2d 897, 899 (Ala. 1995)); accord S H Contractors, Inc. v. A.J.Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990); In re MercuryConstr. Corp., 656 F.2d at 939; ND Fashions, Inc. v. DHJIndustries, Inc., 548 F.2d 722, 728-729 (8th Cir. 1976); see alsoGlass, 114 F.3d at 455 n. 62 ("Although section 3 default may be considered by the district court, said default only encompasses the limited range of circumstances when a party seeking arbitration has `substantially utiliz[ed] the litigation machinery' before pursuing arbitration, and permitting the moving party to arbitrate would seriously `prejudice the party opposing the stay.'") (quoting Maxum Foundations, Inc. v. Salus Corp.,779 F.2d 974, 981 (4th Cir. 1985)). McDonald does not contend that the defendants waived their right to arbitration by substantially participating in the litigation process.